IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARY D. THOMPSON,                    )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )    CIVIL ACTION NO. 1:09cv402-CSC
                                     )                (WO)
MICHAEL J. ASTRUE,                   )
COMMISSIONER OF                      )
SOCIAL SECURITY,                     )
                                     )
          Defendant.                 )

## MEMORANDUM OPINION

### I.  Introduction

The plaintiff, Mary D. Thompson ("Thompson"), filed this lawsuit challenging a final

judgment by Defendant Michael J. Astrue, Commissioner of Social Security, in which he

determined that she is not "disabled" and, therefore, not entitled to child disability or

supplemental security income benefits.[1]

In 1992, when Thompson was five years old, she was awarded supplemental social

security income benefits based on "evidence in the file reveal[ing] a severe speech problem

and mental deficiency" and a primary diagnosis of autistic disorder and other pervasive

developmental disorder.   (R. 50.)   Upon reconsideration of Thompson's benefits in

September 1998, the Commissioner determined that the claimant's benefits should

---

[1] Thompson was a child when her mother initially submitted an application on her behalf; however, Thompson turned 18 years old on December 6, 2005, during the pendency of her application. The ALJ discussed Thompson's application as an adult in his analysis.

continue based on a primary diagnosis of mental retardation.  (R. 56.)  In January 2002, the Commissioner reconsidered the case and again determined that Thompson should continue to receive supplemental security income benefits due to her disability.  (R. 117.)

After Thompson's father passed away, Thompson's mother filed on behalf of Thompson an application for child's disability insurance benefits as a survivor on December 1, 2005.  (R. 302.)  Five days later, on December 6, 2005, Thompson turned eighteen years of age.  Shortly thereafter, the Commissioner reconsidered its previous findings of disability, specifically determining whether Thomspon was entitled to child disability benefits and supplemental security income.[2]  (R. 22, 26, 282.)  Thompson's application was denied at the initial administrative level.  Thompson then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[3]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The case is now before the court for review pursuant to 42 U.S.C. § 405 (g) and § 1631(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the

---

[2] Because Thompson turned 18 years old in December 2005, the ALJ treated her application for survivor benefits as an application for both child disability benefits and supplemental security income based on her disability.  (R. 22.)

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

court's review of the record in this case and the briefs of the parties, the court concludes that

the decision of the Commissioner should be reversed and this case remanded to the

Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months. . . .

To make this determination,[4] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[5] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  Administrative Proceedings

Thompson was 19 years old at the time of the hearing before the ALJ. (R. 275.) She completed the tenth grade. (R. 277-78, 367.) Thompson has no prior work experience. She alleges that she became disabled due to mental retardation and a seizure disorder. Following the hearing, the ALJ concluded that Thompson's seizure disorder is a severe impairment. (R. 26.) Next, the ALJ determined that Thompson has the residual functional capacity to perform a full range of work at all exertional levels but with the usual seizure precautions.

4

(R. 28.)  Relying on the Medical-Vocational Guidelines, the ALJ concluded that there were significant jobs in the national economy that Thompson could perform.   (R. 32.) Accordingly, the ALJ concluded that the plaintiff was not disabled.  (*Id.*)

## IV.  The Plaintiff's Claims

Thompson asserts the following claims:

(1)     Despite Thompson's pro se status, the Commissioner failed to comply with his heightened duty to develop the record despite Thompson's prior award of benefits based on mental retardation. Specifically, Thompson contends that her waiver was ineffective and she was prejudiced by the ALJ's failure to develop a full and fair record.

(2)     The Commissioner erred in failing to find that Thompson met or equaled the requirements of Listing 12.05C despite her previous receipt of child benefits based on mental retardation and multiple consistent IQ tests indicating a full scale IQ in the low 60's.

(3)     The Commissioner erred in failing to articulate any reasons for not crediting multiple psychologist's opinions.

(Doc. No. 19.)

## V.  Discussion

Thompson raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).  However, the court pretermits discussion of Thompson's specific arguments because the court concludes that the ALJ erred as a matter of law.

Thompson was unrepresented by counsel at the hearing. A claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (citing *Smith v. Schweiker*, 677 F.2d 826 (11th Cir. 1982) and 42 U.S.C. § 406). The deprivation of the statutory right to counsel at a Social Security hearing is a statutory wrong and not a constitutional wrong. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing *Holland v. Heckler*, 764 F.2d 1560, 1563 (11th Cir. 1985)). Any waiver of that right must be knowingly and intelligently made. However, in order for a waiver to be effective, the claimant must be "properly apprized of [her] options concerning representation." *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982).

Where the right to representation has not been waived, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Graham*, 129 F.3d at 1422-23 (citing *Brown*, 44 F.3d at 934-35). *See also Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982) (When a disability claimant is unrepresented by an attorney, the duty of an ALJ to develop a full and fair record rises to a special level). The ALJ must conscientiously probe into, inquire of, and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). This duty is further heightened when the claimant suffers from a mental impairment. *See Hodes v. Apfel*, 61 F. Supp. 2d 798, 811 (N.D. Ill. 1999); *Fogarty v. Secretary of Health and Human Services*, 690 F. Supp. 166, 169 (W.D.N.Y. 1988) (mental retardation).

A serious deprivation of the right to counsel can mature into a violation of due

6

process.

> It is not necessary to determine that the presence of counsel
> would necessarily have resulted in any specific benefits. *See*
> *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. Unit B July
> 1981). However, there must be a showing of prejudice before
> it is found that the claimant's right to due process has been
> violated to such a degree that the case must be remanded to the
> Secretary for further development of the record. *See Brown*, 44
> F.3d at 934-35. The court should be guided by whether the
> record reveals evidentiary gaps which result in unfairness or
> "clear prejudice." *Id*.

*Graham*, 129 F.3d at 1423.

During the hearing before the ALJ, Thompson was obviously confused by the ALJ's

questions and relied on her mother for assistance.[6] At the beginning of the hearing, the

following discussion occurred:

> ALJ:              . . . So I'm going to tell you again, you've got the
>                   right to be represented here by a lawyer or a non-
>                   lawyer who's familiar with our practices and
>                   procedures if that's what you choose. If you want
>                   more time to get a lawyer or non-lawyer who's
>                   familiar with our procedures, I'll give you up to
>                   60 calendar days from and after today to find
>                   yourself such a person. When that person agrees
>                   to take your case they'll call my office, we'll put
>                   your case back on the docket, and then we'll have
>                   a hearing.
>
>                   On the other hand, you can waive, and by waive
>                   I mean give up your right to be represented by a
>                   lawyer or non-lawyer who's familiar with our
>                   practices and procedures. If you waive that right

---

[6] The court notes that Thompson's mother quit school in the eighth grade and may also suffer from a disability. (R. 250, 277.)

we'll have the hearing today, but that's a decision
you have to make. I can't make it for you. What
would you like to do?

[Mother]:        Have the procedure today.

ALJ:             Pardon me?

[Mother]:        I would like to have the procedures today.

ALJ:             You want the hearing today?

[Mother]:        Yes, sir.

ALJ:             Is there a reason why your daughter can't answer?
                 She's over 18 years old, why can't she answer for
                 herself.

[Mother]:        She may not understand some of the things you
                 saying. That's why I, I was her representative
                 when she was on Disability. So answer, please,
                 Mary.

[Thompson]: I would like to have it today.

(R. 272-73.)[7]

—————————————

[7] Thompson became easily confused throughout the hearing. For example, when the ALJ asked
Thompson about documents in her file, the following discussion occurred:

ALJ:             . . . Do you have any problem with me deciding your case
                 based upon the documents in the file, together with what
                 we talk about today?

[Mother]:        He asked you a question, Mary.

[Thompson]:      What did he ask?

(R. 274.) In addition, when the ALJ asked Thompson whether she completed the tenth grade, the following
discussion occurred:

ALJ:             The file tells me you completed the tenth grade in school.

During the proceeding, Thompson did not specifically waive her right to counsel.

---

|              | Did you finish the tenth grade? |
| --- | --- |
| [Thompson]:  | No. |
| ALJ:         | Did you finish the ninth grade? |
| [Thompson]:  | I went to the 12th grade. |
| [Mother]:    | You didn't complete the 12th. |
| [ALJ]:       | The 12th grade. |
| [Thompson]:  | I went to the 12th. |
| [ALJ]:       | I see.  Did you graduate? |
| [Thompson]:  | No, I didn't. |
| [ALJ]:       | Did you get a certificate from being in Special Education classes? |
| [Thompson]:  | No, I didn't. |
| [ALJ]:       | Did you complete the 12th grade? |
| [Thompson]:  | No. |
| [Mother]:    | No, sir. |
| [ALJ]:       | Did you complete the 11th grade? |
| [Thompson]:  | No, sir. |
| [ALJ]:       | Did you complete the tenth grade? |
| [Thompson]:  | No, sir. |
| [ALJ]:       | Well, I'm sorry.  I'm not understanding you.  If you didn't complete these grades how did you come to go to the 12th grade? |
| [Thompson]:  | They skipped me to the 12th grade. |

(R. 277-78.)

Thompson's statement that she "wished to have a hearing that day" is ambiguous, at best. At no point did she indicate that she wished to proceed without counsel. Moreover, the record indicates that the Commissioner previously found that Thompson was disabled due to a "mental deficiency" or "mental retardation" on three prior occasions. Although the ALJ had knowledge of the Commissioner's previous findings of disability based on mental retardation and Thompson's mother advised him that her daughter may not have understood his explanation, the ALJ did not ensure that Thompson's waiver was knowingly and intelligently made. Nothing in Thompson's testimony demonstrated Thompson's understanding of the consequences of waiving counsel. On this record, the court cannot conclude that Thompson knowingly and voluntarily waived her right to be represented at the hearing.

Thompson argues that this case should be remanded because the ALJ did not fulfill his duty to fully develop the record, particularly in light of her *pro se* status. However, as already explained a remand to the Commissioner is not warranted unless the plaintiff shows prejudice. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985).

> This at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision. *See Smith*, 677 F.2d at 830 (relevant inquiry is whether the record reveals evidentiary gaps which result in unfairness or clear prejudice).

*Id.* at 1540.

The court concludes that Thompson was prejudiced because the ALJ either failed to

consider all of the evidence in the record or did not have all of the relevant evidence before him when reaching his decision.  In his brief, the Commissioner admits  that "it is unclear whether the ALJ actually considered the evidence from the Plaintiff's earlier application." (Doc. No. 20, p. 14.)

Thompson initially filed an application for supplemental security income benefits under Title XVI as a child and was found disabled on December 17, 1992, with an onset date of September 1, 1992.  (R. 50.)  The Commissioner specifically found that Thompson met Listing 112.10A2 based on a primary diagnosis of autistic disorder and other pervasive developmental disorder and "evidence in the file reveal[ing] severe speech problem and mental deficiency." (*Id.*)  Upon subsequent periodic review of her medical condition in 1992, 1998, and 2002, the Commissioner determined that Thompson's benefits should continue due to a primary diagnosis of mental retardation.  (R. 56, 117.)

Thompson turned 18 years old on December 6, 2005.   Shortly thereafter, the Commissioner reconsidered whether Thompson was entitled to disability benefits.  A state agency disability officer determined that Thompson was no longer disabled as of March 1, 2006 based on a redetermination of disability "under the rules for adults who file new applications."[8]  (R. 26.) After conducting a hearing, the ALJ also determined that Thompson was no longer entitled to disability insurance benefits pursuant to Title II of the Social Security Act,  42 U.S.C. § 401 *et seq.* as of December 1, 2005.  (R. 32.) In addition, the ALJ

---

[8] *See* 20 C.F.R § 416.987.

11

concluded that, with respect to Thompson's request for supplemental insurance benefits, Thompson's disability ended on March 1, 2006.  (*Id.*)

The medical records indicate that, on November 6, 1992, Dr. Don Crook, Jr., a psychologist, conducted testing and an examination and concluded that the "evaluation is suggesting of an individual functioning within the range of mild mental retardation."  (R. 228.)  The doctor specifically noted that Thompson "can be expected to have significant difficulty with understanding, memory, concentration and persistence at tasks."  (*Id.*)

On May 18, 1998, Dr. Robert J. Nolan, a consultative psychologist, conducted an evaluation, including administration of the Wechsler Intelligence Scale for Children.  (R. 232.)  Thompson's scores indicated a verbal IQ of 62, a performance IQ of 64, and a full scale IQ  of 60.  (R. 232.)  Dr. Nolan's diagnostic impression was that Thompson suffered from mild mental retardation.  (R. 233.)

On November 28, 2001, Dr. J. Walter Jacobs, a consultative psychologist, interviewed Thompson and conducted additional testing.  (R. 250-253.)  On the WISC-III, Thompson received a verbal IQ of 63, a performance IQ of 66, and a full scale IQ of 62.  (R. 252.)  Dr. Jacobs also noted that Thompson performed poorly on tests of abstract reasoning, both verbal and visual.  (*Id.*)  Dr. Jacobs concluded that the intellectual assessment indicated Thompson was functioning in the lower reaches of the mild range of mental retardation and that her ability to function in an age appropriate manner, cognitively, communicatively, socially, adaptively, and behaviorally were significantly impaired.  (R. 253.)

When determining that Thompson's intellectual functioning is not disabling, the ALJ

relied on an evaluation conducted by Dr. Stephen D. Bailey, a consultative psychologist, on January 26, 2006.  Dr. Bailey noted that Thompson's concentration was poor and that, although "she appeared to be attending to all questions and seemed bright enough to answer the questions offered, she simply shrugged her shoulders and gave no answer.  She did appear to be attentive to the examiner; eye contact suggested that she was cognizant of all questions.  Many of the questions offered by the examiner were either unanswered or were simply answered with an 'I don't know'. . . ." (R. 368.)  The psychologist further determined that Thompson's fund of information and abstractions seemed poor and that her judgment and insight were questionable. (*Id*.)  Although testing indicated Thompson has a verbal IQ of 65, a performance IQ of 63, and a full scale IQ of 61, Dr. Bailey determined:

> Mary Denise Thompson's current cognitive functioning as defined in the WAIS-III administration fall within a range which is considered that of Mild Mental Retardation.  However, as noted above, the examiner does not believe that Ms. Thompson gave her best or fullest efforts to the examination procedure.

(R. 368-69.)  Dr. Bailey also noted that he was "uncertain as to the correct measure or status of [] Thompson's intelligence."   (R. 368.)   Thus, the court is left to guess whether Thompson's intellectual functioning is disabling.  This court cannot conclude that the ALJ's reliance on Dr. Bailey's "uncertainty" about Thompson's intelligence level when determining that Thompson is not disabled is supported by substantial evidence.

Moreover, the medical records indicate that Dr. Bailey was not provided Thompson's prior psychological evaluations or school records prior to the evaluation in January 2006.

(R. 371.)  Although the Commissioner argues that the prior IQ results and evaluations are stale, "[m]ental retardation is not normally a condition that improves as an affected person ages. . . .  Rather a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.'"  *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (quoting *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001)).  Given that Thompson's IQ scores as a child and teenager were similar to her scores in January 2006, it is possible that information concerning the claimant's prior diagnoses of an autistic disorder and mental retardation, other test results, and documentation indicating Thompson attended special education classes throughout most of her schooling would have assisted Dr. Bailey when assessing Thompson's intelligence level. Because Thompson was previously found to suffer from mental retardation and represented herself *pro se*, the circumstances of this case demand that the ALJ take additional steps to see that the record is fully developed.[9]   It is error for the ALJ to fail to obtain additional testing or otherwise develop the evidence, if that information is necessary to make an informed decision.  *See Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988).  On remand, the Commissioner must insure that a consultative psychologist or psychiatrist is provided all relevant evidence, including prior test results and school records, before making a determination as to

---

[9] The court recognizes that age-18 re-determinations are treated as new applications and, therefore, the ALJ is not required to presume disability pursuant to the rules in 20 C.F.R. § 416.994.

14

Thompson's intellectual functioning.[10]

The court likewise cannot conclude that the ALJ's finding that Thompson was a senior in high school with average grades is supported by substantial evidence. Although Dr. William Grant Watson, Jr., a neurologist treating Thompson's seizure disorder, noted that Thompson was "a senior in high school making average grades" (R. 366), substantial evidence in the record indicates that Thompson received special education services throughout most of her schooling and completed the tenth grade before dropping out of school.[11] (R. 58, 141, 145-146, 173, 182, 192, 195, & 367.) Thus, the ALJ's determination that Thompson's intellectual functioning is not disabling because Thompson attended twelfth grade with average grades is based on incorrect information and is not supported by substantial evidence.

The ALJ also failed to specify the weight afforded to Dr. Crook's, Dr. Nolan's, and Dr. Jacobs' opinions. In assessing the medical evidence in a Social Security case, the ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Shafarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence

---

[10] In addition, the Commissioner on remand should consider how the side effects of Thompson's seizure medication together with her other impairments would affect Thompson's intellectual functioning.

[11] The court notes that a teacher questionnaire completed in October 2001 indicates that, although Thompson went to a "regular classroom," she received special education services in high school. (R. 182-192.)

15

of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ may "reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). *See also Shafarz*, *supra*. When summarizing the medical records, the ALJ accepted Dr. Bailey's assessment that Thompson was malingering during the evaluation and ignored medical records from other consultative physicians indicating that the claimant suffers from mental retardation. The ALJ did not state with particularity the weight he gave to any of the other consultative physicians' medical opinions or provide specific reasons for rejecting their opinions. The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion. Because the ALJ failed to assign weight to the other consultative physician's opinions or consider prior medical evidence establishing that Thompson suffered from mental retardation, this court is unable to determine whether the ALJ's decision is supported by substantial evidence.

Because the ALJ failed to consider prior medical records indicating Thompson suffered from mental retardation, failed to specify his reasons for rejecting Dr. Crook's, Dr. Nolan's, and Dr. Jacobs' opinions, and failed to fully develop the record with respect to Thompson's intellectual functioning, the court concludes that Thompson's "right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Brown*, 44 F.3d at 935.

Consequently, on remand, the Commissioner should:

1.    Consider whether Thompson should be provided counsel throughout the proceedings.

2.    Further develop the record and clarify inconsistencies between the consultative examiners' opinions in 1992, 1998, and 2002 and Dr. Bailey's opinion in  2006 by providing all relevant medical records to a consultative psychologist or other mental health expert and/or conducting additional testing.

3.    Consider and specify his reasons, if any, for discounting the opinions of Dr. Crook, Dr. Jacobs, and Dr. Bailey.

4.    Consider how the side effects of Thompson's seizure medication together with her other impairments would affect Thompson's intellectual functioning

## V.  Conclusion

Accordingly, the court concludes that this case be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order shall accompany this opinion.

Done this 28th day of September, 2010.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE


17